308 A.2d 518.

ALFRED E. TAVERNIER, JR. *vs.* JOHN F. McBURNEY, JR.,
*Executor of the Will of Alfred E. Tavernier, Sr.*

AUGUST 9, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

DORIS, J. This cause was heard before a justice of the
Superior Court, sitting with a jury, on the appeal of the
plaintiff, hereinafter referred to as the contestant, from a

decree of the Probate Court of the City of Woonsocket admitting to probate a written instrument dated August 7, 1965, purporting to be the last will and testament of his father, Alfred E. Tavernier, Sr., who died on January 3, 1966. The decree granted letters testamentary to the defendant, John F. McBurney, Jr. sometimes referred to as the proponent, who was the person named as executor in the instrument in question.

After a trial in Superior Court the jury rendered a verdict in which they held the written instrument of August 7, 1965, to be the last will and testament of Alfred Tavernier, Sr. Judgment was thereupon entered upholding the validity of the will and sustaining the decree of the Probate Court of the City of Woonsocket. The cause is before us on contestant's exceptions to certain rulings at the trial and to instructions by the trial justice.

The record establishes that testator was born on August 10, 1908 in the city of Woonsocket, and that he died in January of 1966. He was under guardianship from January 15, 1962, up to and including the date of his death. The testator executed the will in question on August 7, 1965, in the Bocce Club, a Woonsocket restaurant owned by testator. It was witnessed by Dr. Edward R. Thompson and John F. McBurney, Jr., executor and proponent here. In the will no provision was made for Alfred E. Tavernier, Jr., testator's only child, contestant here. Pursuant to the terms of the will, the Bocce Club, which was the main asset of testator's estate, was left in trust, the beneficiaries of which are Thomas Grillo, the then manager of the Bocce Club, and testator's two sisters, Louise Robillard and Ernestine Marguerite.

At the hearing, contestant produced unrebutted medical testimony that testator had a chronic brain syndrome, and suffered from Laennec's cirrhosis and chronic alcoholism. It was also established by contestant that ten days prior

to the execution of the will testator had completed a six week stay in the Pratt Institute, a Boston hospital, where he was being treated for these aforementioned maladies. However, it is also undisputed from the testimony that testator abstained from alcohol during the month of August 1965.

Finally, in conjunction with its case contestant attempted to introduce expert testimony of Dr. Oscar Stapans, a psychiatrist who had examined testator periodically in 1964, but whose last examination of testator took place 14 months previous to the execution of the will.

The first of plaintiff's contentions is that the trial justice committed reversible error in not permitting Dr. Oscar Stapans to answer any of the hypothetical questions posed to him concerning testator's mental capacity and susceptibility to undue influence on August 7, 1965, when the will was executed.

It is a well-established rule that the admission of a hypothetical question ordinarily rests in the discretion of the trial justice, and his rulings thereon will not be disturbed except for the abuse of such discretion. *Araujo* v. *Technical Casting Co.*, 100 R. I. 90, 211 A.2d 645 (1965); *Collins* v. *Gabrielle*, 87 R. I. 235, 139 A.2d 874 (1958).

It is also a well founded principle that to be considered admissible, a hypothetical question to an expert witness must embrace all the essential elements of the situation as they appeared in evidence. And unless the question, as posed, contains all the pertinent, undisputed facts, its exclusion by the trial justice is not an abuse of discretion. *State* v. *Greene*, 74 R. I. 437, 60 A.2d 711 (1948); *Caporicci* v. *United Electric Rys.*, 136 A. 11 (R. I. 1927); *Oliver* v. *Pettaconsett Constr. Co.*, 36 R. I. 477, 90 A. 764 (1914); *Canham* v. *Rhode Island Co.*, 35 R. I. 177, 85 A. 1050 (1913).

With these principles in mind, we turn to an examina-

tion of the purported hypothetical questions and the state of the record on which they were based. It is clear from such examination that each of the questions excluded was deficient in that each failed to include all of the facts in evidence on which an answer could be supported.[1]

None of these hypothetical questions to which objections were sustained was properly framed in the light of the evidence so as to be likely to do otherwise than mislead the jury. Thus, we find no abuse of discretion on the part of the trial justice in excluding the questions.

We now consider contestant's second contention. At the conclusion of arguments by both parties, the trial justice, in charging the jury on testamentary capacity, stated:

> "In other words, sane mind as used in these instructions means a mind sufficient to enable a testator to understand what business he is engaged in while he is making a will, also a mind sufficient to enable him to know who the natural objects of his bounty are, his relations to them, what property he has, and the dispositions which he desires to make of it."

Contestant alleges that the giving of this charge, as it stands, constitutes reversible error on the part of the trial justice, in that it fails to include a charge to the effect that testator may have been a "distracted person" at the time that he executed his last will and testament, and, that if so, he was without sufficient mental capacity to make a valid will. It is contestant's argument that there was ample evidence from which the jury could adduce that testator was a "distracted person" and consequently, in light of

[1]Essential to a proper foundation for the eliciting of the opinion sought of Dr. Stapans, was the inclusion of the uncontroverted evidence that testator had completely abstained from alcohol during the month of August, 1965. This evidence was not included in any of the excluded hypothetical questions.

G. L. 1956 (1970 Reenactment) §43-3-7,[2] was insane. Thus, contestant contends, it was error for the trial justice not to charge as requested. This contention, however, rests on the proposition that insanity and lack of testamentary capacity are interchangeable. This court has long held otherwise. In *Rynn v. Rynn,* 55 R. I. 310, 181 A. 289 (1935) we stated:

> "An insane delusion does not deprive a testator of the capacity to make a will, if the delusion does not affect the memory and understanding of the person who suffers therefrom as to the nature and extent of his estate, the proper objects of his bounty and the nature of the testamentary act. To have such an effect it must be found that the delusions substantially affected the will and that one or more of its provisions were the product thereof. *Page on Wills,* (2nd ed.) Vol. 1, p. 166; *Rivard v. Rivard,* 109 Mich. 98; *In re Rockett's Estate,* 191 Mich. 499." *Id.* at 322, 181 A. at 294.

We feel that the trial justice's charge correctly stated the law on testamentary capacity, and that the contestant's contention to the contrary is without merit.

All of the contestant's exceptions are overruled, the appeal is denied and dismissed and the judgment appealed from is affirmed.

Mr. Justice Joslin did not participate.

*Tobin, Decof, LeRoy & Silverstein, Thomas H. Quinn,* for plaintiff-appellant.

*John F. McBurney, Jr., pro se, Matthew C. Cunningham,* for defendant-appellee.

---

[2]General Laws 1956 (1970 Reenactment) §43-3-7 sets out the definition of insane person as follows: "The words 'insane person' shall be construed to include every idiot, person of unsound mind, lunatic and distracted person."